Newman, J.
Defendant in error purchased his lot from plaintiff in error and in his deed are found the same restrictions that are contained in the deeds of Kyle, the allotter, to plaintiff in error. No claim, however, is made that plaintiff in error is *379 under any different obligation to defendant in error in the observance of these restrictive covenants than he is to any of the other lot owners. Defendant in error, so far as his right to equitable relief is concerned, is in the same position as the other lot purchasers.
It is alleged in the petition that Kyle platted his land in lots with the design of having the same used and occupied as private residences, and it is urged by counsel that the plat constituted, and was designed as, a residence district. So far as we are advised the recorded plat furnishes no suggestion whatever of any intention on the part of Kyle to impose any restriction upon the purchasers as to the manner in which they were to build upon the lots purchased by them. It is further alleged that plaintiff in error, by the acceptance of his deeds from Kyle, covenanted with Kyle, and his assigns as well, for the use and benefit of any and all persons who became the owners of or might have any title derived immediately or remotely from Kyle or his grantees to any lot or part thereof in the allotment, not to erect, or cause, permit or allow to be erected or placed at any time or for any purpose, any dwelling or building less than 24 feet from the street line. This is denied by answer. The burden was upon defendant in error to establish this proposition.
In all the deeds from Kyle for the lots in his allotment there are contained restrictions identical with those contained in the deeds to plaintiff in error, with the exception of the deeds for the two lots at the northwest corner of Oak Hill avenue *380 and Glenaven avenue, which, it appears, were practically the first lots sold by Kyle. In inserting these restrictions in the deeds, Kyle, no doubt, had in his own mind and contemplated a general plan or scheme of improvement for these lots. It is also manifest from the fact that he retained none of the property that this general plan was intended by him to be for the benefit of his grantees and not for himself. But can it be said that such plan came to the notice of his grantees when they purchased their lots, or that they purchased them with reference thereto? If the plan had been noted upon the recorded plat, notice thereof would be imputed to each lot purchaser. It would be a part of his chain of title. And, again, Kyle, the allotter, in his deeds did not advise a purchaser of a general plan, and did not covenant that all sales of lots in his allotment should be made subject to like restrictions, as was done in Wallace et al. v. The Clifton Land Co., 92 Ohio St., 349; nor did each purchaser covenant and agree as well for the use of every other person who might become the owner of a lot in the allotment as for the use of his grantor that he would observe the restrictions, as was done in McGuire v. Caskey, 62 Ohio St., 419. In those two cases, which are entirely different from the case here, the court held that a lot owner could enforce by. injunction against any other lot owner the restrictive covenants written into each deed in pursuance of the general plan.
It is stated by counsel for defendant in error that the several purchasers of lots understood when they made their purchase that Kyle intended *381 that the plat of lots should be devoted to residential purposes — in other words, that they had actual notice of a general plan. We find no evidence in support of this claim. It is true that when this case was tried, in 1916, practically all the lots had been built upon for residence purposes and a uniform building line had been observed. But it is to be remembered that plaintiff in error acquired his lots in 1911 and from aught that appears in the record the same condition as to residences did not exist then. In fact, when plaintiff in error purchased his lot, there had been erected a business house at the northwest corner of Oak Hill avenue and Glenaven avenue, and perhaps one or two residences.
The restrictions contained in the deeds are as follows:
“It is further agreed and made a part of the consideration of this deed that no dwelling shall be erected on said above premises herein conveyed containing less than six rooms; said dwelling to be located not less than twenty-four feet from the street line not including porches.
“And it is further agreed and made a part of the consideration of this deed that no intoxicating liquors shall ever be sold or manufactured, nor shall traffic in intoxicating liquors of any kind be had on said premises.”
These restrictions, so far as a purchaser knew or was bound to know, may have been inserted in his deed alone and were not intended to apply to any other lot in the allotment, for we know of no rule of law that charges one lot owner with con *382 structive notice of a covenant contained in a deed not in his chain of title. Each purchaser, of course, knew that his grantor, Kyle, could enforce the observance of these restrictions, but we do not know upon what theory the covenant in his deed would advise him that he owed a similar duty to the other lot owners. So there is nothing on the recorded plat or in his deed that would charge plaintiff in error when he purchased his lot with notice of a general plan or with notice that the restrictions contained in his deed were for the benefit of the other lot owners.
In Mulligan v. Jordan, 50 N. J. Eq., 363, it was held: “The right of grantees from a common grantor to enforce, inter se, covenants entered into by each with said grantor, is confined to cases where there has been proof of a general plan or scheme for the improvement of the property, and its consequent benefit, and the covenant has been entered into as part of a general plan to be exacted from all purchasers, and to be for the benefit of each purchaser, and the party has bought with reference to such general plan or scheme, and the covenant has entered into the consideration of his purchase.”
In that case the same covenant had been inserted in each deed made by the allotter and it is said by the court that this has been held not to be sufficient evidence of the covenant having been entered into for the benefit of the other lands conveyed by the same grantor. Several cases are cited in support of this holding, among which is DeGray v. Monmouth Beach Club House Co., Id., 329, 340, *383 where Green, Vice Chancellor, after reviewing and analyzing numerous cases relating to building restrictions, uses this language: “The law, deducible from these principles and the authorities, applicable to this case, is, that where there is a general scheme or plan, adopted and made public by the owner of a tract, for the development and improvement of the property, by which it is divided into streets, avenues and lots, and contemplating a restriction as to the uses to which buildings or lots may be put, to be secured by a covenant embodying the restriction, to be inserted in each deed to a purchaser; and it appears, by writings or by the circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject to and have the benefit thereof; and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan; one purchaser and his assigns may enforce the covenant against any other purchaser and his assigns, if he has bought with knowledge of the scheme, and the covenant has been part of the subject-matter of his purchase.”
In the DeGray case the conclusion reached was that the right of the complainant to maintain his action was clear. But the court was of the opinion that the right of action was dependent as much upon the fact of the general scheme as on the covenant in the deed. There was no doubt in the mind of the court that each purchaser had bought with the understanding that all deeds were to contain the covenant, and had bought with that consideration in view. On page 341 are stated numerous *384 facts and circumstances which clearly established a general plan and from which knowledge thereof was chargeable to each lot owner.
But in the instant case defendant in error failed to show that plaintiff in error when ’he purchased his lots knew that the restrictions in his deeds were for the benefit of other lot owners or that he bought with notice that a plan was to be- carried out with respect to the lots sold or to be sold in pursuance of it. Our holding is, therefore, that defendant in error was not in a position to maintain an action to restrain plaintiff in error from violating the restrictive covenants contained in. his deed.
But assuming that the right of action did exist in defendant in error, was the court of appeals correct in holding that the building constructed by plaintiff in error was in violation of the restriction? The restrictive covenant with which we are concerned is an agreement on the part of the grantee that no dwelling shall be erected upon the premises containing less than six rooms, the dwelling to be erected not less than 24 feet from the street line not including porches. It is urged that this restriction contemplated the use of the lot for residence purposes. To give it this construction it would be necessary to extend and enlarge the meaning of the language used. This would be in violation of the well-established rule that words restricting the use of property are to be construed strictly against the grantor and those claiming the benefit of such restriction. The covenant simply describes the kind of a dwelling that shall be erected upon the lot and defines its location. It does not provide that *385 a dwelling' only shall be erected thereon. If the restriction had been: “No business house shall be erected on said premises less than two stories in height to be located on the street line,” would it be seriously contended that such restriction would have precluded the erection of a dwelling house? It is to be noted that immediately following the restriction we have been considering is a clause prohibiting the sale of intoxicating liquors on the premises. If the lot were to be used for residence purposes only, reference to the sale of intoxicating liquors would have been wholly unnecessary. If business was to be prohibited, it would be business generally and there would have been no necessity of specifying a particular kind that was to come within the prohibition. According to our view, the restriction in question did not prohibit the use of the lot for business purposes, and, as the clause defining the location refers to a dwelling, the language cannot be extended to apply to a business house.
The court of appeals in its order required that only that part of the building within 24 feet of Glenaven avenue be removed. The building unquestionably is not a “dwelling” as that term is understood and as it is used in the restrictive covenant. It is primarily a business block. We infer, therefore, from the order made by the court of appeals, that it found no objection to the erection of such a building but was of. the opinion that it should not have been built within 24 feet of Glenaven avenue. We cannot concur in this view. The uniform property line regulation, as we have said, *386 related solely to a dwelling and could not apply or be enforced where a business block was built.

Judgment .of the court of appeals reversed and judgment for plaintiff in error.

Nichols, C. J.,.Wanamaker, Jones, Matthias, Johnson and Donahue, JJ., concur.